First case, the first case teed up on the minutes appears is Henry Asbestos Products, so Mr. Bari. May it please the court and thank you, your honor. My name is Nicholas Varey and I'm here on behalf of the appellant Cranko. I'd ask to reserve three minutes for rebuttal. Your honor, the matter before the court is a negligence action involving a failure to warn about alleged hazards associated with aftermarket replacement materials that are made and sold by third parties. You can take it as a given Mr. Varey that we've read the submissions and now we've got some questions for you. Okay. And my first one is you make a law of the case pitch and say that the district court was wrong in believing that Judge Rebrano's decision in Schwartz established the law of the case, but wasn't the point on which the district court made that decision a pure question of law, that is a pure legal analysis of what Pennsylvania law would be with respect to the case you had? Your honor, I think our point procedurally, and I don't think we're saying anything differently from what you said, is that just the law of the case doctrine doesn't apply to an interlocutory order like a summary judgment order. That's when facts are an issue, right? When there's something more to develop. Law of the case doctrine won't make a summary judgment rule binding on a later trial court decision when there are new facts in the case. But here there was just a straight up question of law. How is Pennsylvania going to come out on this question with respect to the bare metal defense? That was it. On that score, your honor, we believe that the district court adopted Schwartz, which is tantamount to what you're saying, which is that's how she appeared to have decided the issue of law. It's just simply that we just quarreled with the notion that the summary judgment order was somehow binding on us then on appeal, and that we still had an opportunity to challenge that. Well, we certainly have an opportunity to challenge it before us on appeal. That's not the question. You seem to be making an assignment of legal error to the district court for paying attention to the legal point that was made. We can move past that. You're acknowledging that that was a pure legal issue? Right. The main quarrel with that, your honor, and I don't want to belabor this, I'm cutting in with time, is that the district court, we would have hoped, would have made an independent analysis based on the evidence at trial, as opposed to simply saying that the summary judgment analysis carried forward. Okay. I don't want to waste your time either, but I'm trying to get to an understanding here. What does evidence have to do with it? It was a question of law, right? And nothing else. What is Pennsylvania's Supreme Court going to say about the bare metal defense in this context? It's not a question of whether they win or they don't win. It's just a straight-up question of law, isn't it? As applied to these facts. The rule of duty is applied to the facts, and that's where the court stands as the gatekeeper. That's the question of law. It's not just the definition of the duty, but whether the duty applies under a certain fact pattern. That's your problem, isn't it? You don't like the way Schwartz applied. Well, and we didn't think that the summary judgment fact pattern was identical to the fact pattern at trial, and there were a lot of differences in terms of discussion of non-asbestos-containing alternatives and required use and those sorts of things. And we just had asked that the Schwartz standard been applied to the facts as presented at trial. We had disputed facts, not a resolution of them to apply the duty, as opposed to just saying the court looked at this on summary judgment and we're not looking at it. But you don't dispute that the Schwartz standard, the knowledge standard as articulated in Schwartz, was embodied in the jury instructions. That was the charge, correct, Your Honor. Right. We're talking about the duty, the gatekeeping function, really, as to whether the duty applies on this set of facts, not the finding of breach. I'm sorry, Judge Gross. I'm not going to put too fine a point on it, but is the quarrel or the complaint that the district court judge erred in not revisiting Schwartz or that Schwartz is just simply wrong in predicting what the Supreme Court of Pennsylvania would do? It's the second. Schwartz doesn't accurately predict Pennsylvania law, and if you look at the Schwartz standard as applied to the facts of this case, there is no duty. So you just said both. That's correct. It's not so much a procedural error, I guess, is the point I want to make. It's a substantive error. That solves it. Thank you. It's not a procedural error. You're arguing the substance. You don't really have a procedural gripe. No. It was just the way the application of the Schwartz standard. Good enough. When you say as applied to this case, this may address your second argument, perhaps, before moving back to the legal one, but when you say as applied to this case, if we all agree that the Schwartz standard was what was given in the jury instructions, then at the end of the day, you're really asking us to set aside a jury's verdict. No, we're asking to set aside the decision to present the question to the jury because the standard of duty was not met. They did not meet the duty threshold of proving any evidence of subjective knowledge. If Schwartz applies and if Schwartz is good law, the Schwartz standard says no, and you have to know, and Schwartz lays out an illustration. There was no evidence of Cranco's subjective knowledge. There was no evidence of who Cranco sold the valve to. There was no evidence of when Cranco sold the valve, and there was certainly no evidence that Cranco had any knowledge as to how that valve would be used or whether it contained asbestos in the first place. There wasn't direct evidence, but circumstantial evidence would be sufficient to be giving that charge to jury and certainly to say that the record was not critically deficient of that minimum quantity of evidence for the jury to reasonably afford relief. There was no circumstantial evidence on what Crane knew about the sale of the valve. That's a tough position to take, isn't it, when the district court laid out in detail what that evidence was? I'm probably not doing the man's name justice, but Mr. Pantelioni testified. He testified that you sold things both with asbestos gaskets and without, but he also said, if I'm not mistaken, that it was foreseeable that those gaskets would have to be replaced, seals would have to be broken, and the industrial hygienist, Mr. Blake, testified that there was a study that confirmed there were limited substitutes for asbestos packing. If you've got acknowledgment from the company's own representatives that these pieces of equipment, over time, were going to have to be opened up and seals were going to have to be replaced and that there were limited substitutes for asbestos, and then you also have the testimony that in high-temperature settings like the ones here, it was highly likely that it was going to be asbestos, how can you stand and say there's no circumstantial evidence? I mean, you can say I don't like it or it's not enough, but how can you say there's none? Your Honor, the illustration in Swartz is based on the premise that the original had asbestos in it. There's no evidence here that the original had asbestos. So the fact that Cranco sold some with asbestos and some without… Mr. Verri, I'm sorry, but I don't think that's responsive to what I'm trying to get at. You just said there was no circumstantial evidence at all. I've just laid out for you what the district court, just a part of what the district court said is the circumstantial evidence. I mean, you'd have to concede that's some circumstantial evidence, wouldn't you? Your Honor, it's no evidence of what was sold to this company or the particular valve to which this individual was exposed. It's evidence that generally, at some point in time, Cranco may have sold a valve with asbestos in it to someone, but there's no evidence of an interaction between Cranco… What does Mr. Pantaleoni's testimony mean when he said, yeah, it was foreseeable that those seals and gaskets would have to – that the packing would have to be replaced and things would have to be opened? Isn't that an acknowledgment that it was foreseeable to Crane that somebody was going to be exposed to whatever the seals and packing were, and that even if it weren't asbestos, that they were going to be putting in – they were likely to be putting in, on the basis of Mr. Blake's testimony, asbestos-containing seals and packing? And that's where I have the quarrel, Your Honor, that we would have no knowledge of what was likely or not likely because there's no evidence that Cranco had any reason to know how that valve was to be used. They didn't even know where it was going. The valve was supplied to the St. Joe's Lead facility by Westinghouse. You're taking a huge inferential leap to say that somehow Cranco knew that this valve would be hooked up to a turbine at some facility and used in a high-heat application, particularly if there was no customer interaction with Cranco and there was no evidence of asbestos in it to begin with. It's just – you can't get there, and that's the premise. So you're right. It's foreseeable that someone's changing out gaskets and packing in a valve, but without knowledge of how the valve was going to be used, to whom it was going, or the manner in which it was going to be used, there's no way that Cranco could have made a conclusion, likely, typical, whatever really word you want to use, that this valve would have been used with asbestos. It was simply a guess. And on this record, I think it's speculation to hold that a duty is met under these facts, under a subjective knowledge test, even though we would quarrel that that's the test to begin with. Let's assume tomorrow the Pennsylvania Supreme Court, completely independent of this proceeding, rejected the whole premise of Schwartz and said, we just simply do not agree there is such a thing as a common law duty to warn where someone is merely a manufacturer, as Crane says it is in this case. Does that have any impact on the verdict in this case? I mean, if the Pennsylvania Supreme Court were to say that Schwartz is an incorrect legal standard, and that was the standard under which the case was tried, we would... You would say, as long as it's on appeal, that we can... That's correct. Well, yes, Your Honor, because the case is still pending. Your best argument for their rejecting Schwartz would be restatement of torts, what the California court and a couple of others have done, and the fact they've rejected strict liability in the past. If that is true, can I just... Strict liability actions are under 402A in Pennsylvania, and Pennsylvania has three types of law that deal with these negligence duties. One is the all-house test. That's the five factors that the California Supreme Court covered. Next is restatement section 388, which is what the Broughton court in Washington covered, and the other are these lines of failure to protect cases. Wentling is one. Yanya is the famous Pennsylvania case on that, where you have to have a special relationship. None of those pins here was hit. But moreover, if you read Schwartz, it's based entirely on 402A, which is a strict liability concept. And while our adversaries rely heavily on tincture, the one thing tincture tells you is that strict liability and negligence are different, and yet we have our negligence duty based on a 402A act. Isn't that exactly what Judge Rabrino said? They're different, and there can't be a 402A strict liability cause of action, but negligence is different, and the Supreme Court of Pennsylvania has left that door open, and I think, he says, a case could be made under that negligence failure to warrant. He seems to be doing what you're saying the Supreme Court of Pennsylvania opened the door for. I have two responses to that. The first one is that the highest courts of four other states have looked at this issue. None of them has split the duty on strict liability and negligence. Every one of them has found the same exact duty under strict liability and negligence, and if you think about it, that makes sense on the failure to warrant cause of action, which is kind of a conduct-based thing anyway, so there's not a lot of sunlight between strict liability and negligence on this. But the second point is, if that's correct, if what Judge Rabrino was doing was undertaking a negligence standard under Pennsylvania law, then he needed to look at any of the law on Pennsylvania about negligence duties, and whether that's restatement section 388, whether that's the failure to protect cases, or whether that's the old house factors. You can't say they're separate and then say, I used the same law, 402A, but I just reached two different outcomes. Why, since you think that the federal court has been less than adept at predicting the law, and that the Pennsylvania Supreme Court would see it differently, why do you oppose the idea of this being certified to the Pennsylvania Supreme Court? We didn't oppose it in the sense that we have some great adversity to that, but our response to the question was, the Pennsylvania precedents on this are clear. Well, evidently not, unless you're just prepared to say that Judge Rabrino and those who preceded him in looking at these kinds of cases on the Eastern District of Pennsylvania are completely wrong and they can't read the law. I mean, maybe reasonable minds can differ, but it's tough to say it's clear, isn't it? Well, Your Honor, I don't mean to cast aspersions on the judge. I wasn't trying to say that. The overarching point here, though, is there is no separate body of asbestos law, and there isn't anything under Pennsylvania law that's the bare metal defense. These are questions of legal duty, and they're fundamental principles of tort law. And if you read Going Through Barrier, and it's in Schwartz, when the court's predicting this law of the state's highest court, they look at that court's precedents and then I guess any other thing that makes sense. But the point is that if you look at the precedents of Pennsylvania and the Pennsylvania Supreme Court on negligence duties, it's totally different than the law here. All we have to work with here are two lower court cases from the state courts that predate Tinker. And when we consider, as you have deftly laid out, the wide range of approaches that other state courts have taken, the Sixth Circuit has taken, the potential that was put to you, I think, in Judge Stern's question, as to potentially significantly different treatment once this case becomes final, depending how we would rule, for this case versus other future cases if the Pennsylvania Supreme Court decides differently. And the volume of cases and the amount of money at stake, why wouldn't it be appropriate to get a definitive ruling from the Pennsylvania Supreme Court? That question I leave to your honors. I mean, our position was that the law of Pennsylvania is sufficiently clear that Tinker didn't really deal with negligence duties, and Tinker's a bit of a red herring here because all it did is just recognize that there's always been a negligence and strict liability cause of action, and that runs through Pennsylvania law all the way as far back as I've looked at it. So in our view and in Cranko's view, the law is sufficiently settled on negligence duties that it can be applied. Conversely, if you look at the four other highest courts that have looked at this issue, these facts do not meet any of those legal standards. There would be no legal liability under any of those tests. So the prediction that you're being asked to make is a very sweeping one, and it appears to be that that's further than the Supreme Court would go. But, I mean, I don't want to put myself in your position to say how you should deal with that issue. Isn't it the case in contemplating the possibility of certification, we're really dealing not with just a single question but are conceptually two different questions. One is the existence of a cause of action, a potential liability. But if we were to accept or the Pennsylvania Supreme Court were to accept that there is that cause of action, isn't there a separate question as to what standard would apply, where the court in Schwartz articulated one test, Maryland's articulated a different test, New York's articulated a different test? And even the traditional approach in negligence of mere foreseeability isn't necessarily off the table. Even if we thought there was a basis to predict what the Pennsylvania Supreme Court would do as to the existence of the cause of action, what possible basis do we have as a federal court to anticipate what test the Pennsylvania Supreme Court would then apply if it found a cause of action? Let me preface that by saying I hope foreseeability is off the table by the precedence. But you can look to the precedence of the court. I mean, the notion that asbestos creates some unique body of law and creates some analysis that can't be defined from the common law to date is a bit frightening to those of us who are defending these kinds of cases because it means we can't rely on precedent. And so the precedence on duty in negligence are such that they seem to be sufficiently grounded that the court could achieve that task. Now, I agree with you, though, Your Honor, that it is really two issues, right? Is there a duty? And if there is a duty, what is the duty? So I don't want to quarrel with you. Your assertion of what the analytical steps are is certainly correct. I just don't believe that based on the precedence that are there in the statements of policy that the Pennsylvania Supreme Court has made in cases like Wentling, that that's a task that would be extremely difficult. That it would be very difficult to fashion an outcome on these facts. I'm sorry I went well over. No, that's all right. You were on our time there, Ms. Ferris. We'll hear from you now. Please, the Court. I'm Misty Ferris. I'm here on behalf of Atlee Lynn Dobrik, who is the daughter and the personal representative of Valent Robofsky. The first thing I wanted to address is whether there is circumstantial evidence that Cranco did provide these valves with asbestos gaskets in them and so would know that asbestos-containing replacement gaskets would be used. First of all, Cranco's corporate representative testified that they provided both asbestos and non-asbestos gaskets, depending on the purpose of the valve and depending on what the customer wanted. Right. And do you have any evidence, or did you give any evidence, that the valves that were at the St. Joe's plant where Mr. Robofsky was supposedly exposed to them or the jury found that he was exposed were, in fact, ones that were shipped with asbestos seals and packing, or that Cranco had any reason to know that they would be going to that facility? I do. Mr. Pantolioni testified that their customers, like power plants, he specified, were sophisticated and knew what they needed because they knew what would be running through the lines. Mr. Robofsky said that these were used with turbines, which were all steam-powered. All that's true, but I take Mr. Varey's argument to be, we make the stuff, we put it in the stream of commerce. We don't know where it's going. It's not like there's no evidence that this valve was ordered from Cranco with specifications and that they shipped it with specs, and therefore you could make the inferential step you want us to make. So the things you're saying are interesting and true, but how do they meet the argument Mr. Varey has made? I believe there is because if the power plant was sophisticated and knew that it was going to need these valves to be used with steam, then they knew that they needed the industry standard for steam and they would have asked for valves that would meet that standard, which were valves with asbestos-containing gaskets. Cranco said that it provided asbestos-containing gaskets in their valves if they were asked for by their customers and appropriate to the application. Now given those facts, one, that the turbines were used with steam, two, that the customer was sophisticated enough to know that they were going to be used in steam applications and that they needed something that was appropriate to that application, two, that they knew that the industry standard for steam lines was asbestos and that Cranco provided valves with asbestos gaskets when they were appropriate to the purpose and what the customer requested, then Cranco would have sold the power plant's valves with asbestos-containing gaskets. I didn't think your theory of liability or your argument as to the scope of Schwartz was limited to those asbestos gaskets that were actually sold by Cranco with the pipes. I thought that the argument that you've been making was as to third-party manufacturer replacement parts and that that's what Schwartz reached to create a duty to warrant. That's true. The significance of this is that if Cranco sold the valves with asbestos-containing gaskets, then Cranco knew that asbestos-containing gaskets would be used in those valves in the future. In fact- Just to follow on what Judge Krause said, on the instructions the jury had in this case, did they have to believe that the valve that Crane had supplied contained asbestos gaskets or would it just matter that there was a valve and there could have been, at some point, an asbestos gasket inserted? No, I believe that they did have to believe that they were asbestos-containing gaskets in the valve and that Cranco knew that asbestos-containing gaskets would be used in the valve. This seems like a different theory. Like Judge Krause, I get a completely different impression from the brief. Schwartz requires- You're asking for something or what? Schwartz requires two things. One, that Cranco knew asbestos gaskets would be used in the valves and, two, that they knew that asbestos-containing gaskets would be dangerous when they were removed and replaced. But the knowledge as to the gaskets was not only as to Cranco's. Wasn't your theory about the trial, and I thought in your brief, that it related even to replacement gaskets? Absolutely. Because they were manufactured by third parties, and the knowledge instruction that was given to the jury at trial encompassed the third-party replacement parts. Absolutely. Cranco knew that gaskets would continue to need to be replaced over time. That's why gaskets and valves are dangerous, because valves last much longer than gaskets, than the original gaskets, than replacement gaskets. Valves are used over the life of many gaskets, and Cranco knew that. Well, there's a three-piece test that Judge Rabana laid out, and that first part of his test for negligence failure to warn is the point about, did you know that there was going to be asbestos-component parts used? And your argument now to us is Cranco knew that asbestos parts were going to be used, even aftermarket parts, because it first shipped them with asbestos-containing gaskets and packing, because that's what sophisticated customers were asking for in this setting. Is that the arc of reasoning you're putting in front of us? Yes. That's not the only reason Cranco could have known in other settings. In this setting, that's why they knew. Okay. When you say in other settings, I think that's what the questions you're getting from the bench now are about. Your argument is broader that Schwartz wouldn't just cover circumstances where it's being sold with asbestos packing in the first instance. Is that right? Mm-hmm. But in this case, Cranco says that, well, they didn't know what situation the valves would be used in, but their customer did, and Mr. Pantolioni said these were sophisticated customers who knew what they needed because they knew what was running through the lines. If the customer asked for these valves, Cranco supplied valves with asbestos-containing gaskets. Let's take the broad theory. Cranco ships a valve without asbestos parts, but let's assume that they know that it's possible that someone is going to put an aftermarket part containing asbestos in the valve at some point in its life. What is the meaningful warning that Cranco is supposed to give? How would you phrase it and who is it directed to? Is it to the purchasing agent? Is it to the worker who is actually handling the valve? Possible in the future would not be enough to raise a duty under Schwartz. The significance, well, one of the points that Judge Rubano made is the danger in a gasket is when it's removed. So requiring the warning to be placed by the replacement gasket maker would never be an effective warning. But if the valve manufacturer provides a warning on the valve, that warning could be effective in being delivered to the worker before the valve is opened. Is the fault here the decedent's employer? I'm sorry? Is the fault here the decedent's employer for not warning him or Cranco's fault for not coming up with some kind of warning that would have reached the ultimate user of the product? Well, in this case, the issue is Cranco's duty to provide a warning on its valve about the danger of replacement gaskets that it knew would be used in its valve. Okay, I think I get it. So the warning would be, we didn't put any asbestos in this valve, but be careful if you do. No, no, in this case, Cranco did put asbestos in its valve. And because of that, they knew asbestos would be used in its valve. Those are the facts in this case. How do we reconcile the Schwartz decision with the same judge's decision in the asbestos MDL in Connor? I gather you would try to distinguish it by saying that relates to maritime law. But a good number of the cases that are addressing this issue in other courts  some just discuss it as a traditional negligence versus strict liability kind of action. Some distinguish that as maritime. But what really makes the label of maritime something that, on the theory, given the very same policies that are identified and that are balanced in Connor, why would the federal court and district court, or as we consider the issue, why should we reach a different outcome than Connor in balancing those same interests? Well, I would say that the decision in Connor shows that Judge Robreno is not quick to react to a bias about how these issues should come out. Connor was decided earlier, and Judge Robreno looks at doctrinal trends and was concerned about uniformity in maritime law. More recently, some of the maritime cases have come out differently than Connor did. But at the time Connor was decided, there was a trend among maritime cases in a different direction. And maritime law is supposed to be law across the land, so he had more of a concern about there being more uniformity there. Since that decision was reached, the trend has moved, and Judge Robreno was looking specifically at movement in Pennsylvania law and the policies and what he believed would be the decision of the Pennsylvania Supreme Court. But there, if we acknowledge that even the same district court judge who thought very carefully about these issues in Connor as well as here came to a different result in that case, and we're being asked to predict what the Pennsylvania Supreme Court would do, what basis do we really have looking to Pennsylvania law, even if we accept the question that I put to your colleague, even if we accept the premise that Pennsylvania would create liability here, what basis is there in any Pennsylvania case for us to decide what that test would be, how you articulate what the duty is when Schwartz did it in a different way than Maryland and did it in a different way than New York? And again, maybe the Pennsylvania Supreme Court would revert to more traditional concepts of foreseeability. I agree. It's very difficult, and that's why we supported certification to the Pennsylvania Supreme Court. Can I ask you a question about Section 388 of the Restatement? Your colleagues on the other side there take it at task for not addressing that at all, and I'm just wondering if you've got a response or a take on their assertion that Section 388 was something that wasn't considered by Judge Rebrano and the fact that it wasn't undermines his decision. Well, I believe that he was looking specifically at Pennsylvania law, and I don't believe that the focus in Pennsylvania law required him to address that as specifically. Well, 388 appears that you can make a pretty good pitch that it's got some applicability, right? It addresses specifically liability in the context of supplying a piece of property that's going to be used by somebody else, and that's what we're dealing with here, right? So I take their argument to be you can't trust the Schwartz decision. It doesn't even address the Restatement section that's most pertinent to the point, Section 388, and that argument has thus far gone unanswered by him. I'm just wondering if you've got an answer to their assertion that that lack of engagement with Section 388 undermines the Schwartz opinion. Well, I think that Judge Rebrano engaged with courts around the country who've looked at duties specifically in this context that are more specific to the issue than dealing with the Restatement provision generally. That's Mr. Berry's point, I think, which is there's not a specialized body or shouldn't be a specialized body of asbestos law. He'll speak for himself in rebuttal, but I take his point to be if we think we're creating a different body of law than tort law, then we're getting off on the wrong path. This is general tort law, and you ought to be engaging with the generalized common law, and in this case, a specific summary of the common law is embedded in 388 of the Restatement 2nd, which I think they're arguing is something that Pennsylvania looks to. So what's wrong with that reasoning? Well, I think that asbestos is somewhat different than, for example, the Top case. Lumber is not an inherently dangerous material. That just goes to issues like foreseeability. You know this is dangerous. It doesn't mean that there's some different set of duties and responsibilities and liability standards associated with asbestos just because there are a lot of asbestos cases, does it? No, not because there are a lot of asbestos cases, but when you place an inherently dangerous material in your product or expect that an inherently dangerous material will be used with your product, that's different than expecting your product to be used with a lumber or some... That's a perfectly good basis on which to distinguish toss, and you've done that. I know different people might disagree with it, but I guess I'm still trying to get you to answer whether or not Judge Rebranos not discussing a section of the restatement that seems specifically aimed at this kind of third-party liability that you're talking about, that is Cranko supplying a child that ends up getting used by somebody. That that's problematic for the validity or the quality of the prediction that he made about Pennsylvania law. I don't believe so. Because? Because the duty that Judge Rebranos discussed leads directly to the injury that occurred to the plaintiff. The connection is so tied in this case that I don't believe analyzing it under the particular restatement provision would make a definitive difference. You don't dispute that Pennsylvania follows the restatement second? I'm sorry? You don't dispute that Pennsylvania follows the restatement second? No, I don't. And so presumably it would apply Section 388. You're taking issue with the interpretation of that section? Or are you suggesting that even though in application to other kinds of actions, it would preclude a duty here that there's some exception for asbestos that should be read into 388 under Pennsylvania law? Perhaps I can try it another way. If 388 were the existing law, and that is what Pennsylvania law is, 388, you would only potentially rescue your narrow theory of the case, not the broader theory. Would that be right? I'm sorry? You would only rescue the narrow theory of your case, that is only with respect to those products that claim to hold containing asbestos, not the broader theory of aftermarket replacement parts. The idea that Cranco could sell a product with an asbestos valve in it, expecting that that component would have to be replaced again and again, knowing that the danger from that product was in that replacement, and that it would be replaced with an identical component again and again, that they would escape liability for that. I follow that, but you're offering the words with an asbestos product incorporated in it. That's the narrow theory. That just can't be the law. Right. Well, it seems that then you're agreeing with what Judge Stern is saying. But we've got your argument.  Thank you. Mr. Stern, it's just very well to hear you on rebuttal. Thank you, Your Honor. I just wanted to make a couple of quick points, and I appreciate your indulgence. Give me the full three minutes. Hopefully I won't need it. The jury was not charged on whether the valves came with asbestos or not. The jury was charged on these two knowledge questions, knowledge of use of asbestos, knowledge of dangers of asbestos, but that question wasn't posed to the jury. It didn't need to be, did it, Mr. Verri? I mean, Ms. Ferris has described a theory of liability based on the circumstantial evidence. Right. And you heard it. You said there was no circumstantial evidence. She's just described how Mr. Pantaleone's testimony could lead a jury to say that St. Joe's ordered this. It's sophisticated. It knew what it needed. It ordered it. And you could inferentially say, based on Mr. Pantaleone's testimony, they asked for this kind of valve with that kind of gasket and packing, and they got it. Now, given the standard we're dealing with here, which is any rational jury, why is it irrational for a jury hearing that from your own corporate representative to say, no, we believe it's more likely than not they knew what they needed, they asked for it, and they gave the specs and they got it? Because St. Joe's Lead did not buy the valve from Cranco, and that's in the record. But whether they bought it directly or indirectly, that they asked for what they needed and they got it. But there's no evidence of that. There's Dr. Pantaleone saying that customers would ask for things and power plants would ask for things, but St. Joe's Lead bought the valve from Westinghouse. There's no evidence as to how Westinghouse got it. Somehow we're not communicating. Whether you knew ultimately it was going to St. Joe's or not is irrelevant. Their point is you made a valve, you made it with asbestos gaskets and packing, and put it into the stream of commerce knowing it would go someplace where somebody needed that kind of valve, and St. Joe's needed that kind of valve, and they bought it from some middleman giving specs for what they wanted. So you put it in the stream of commerce with that stuff in it, they went after it in the stream of commerce because they needed it, and they met in a middleman's market and got it. That's what I understand their argument to be. So why isn't that enough for a rational jury to say liability? Because that is just simply too remote. First of all, in this case, there's no evidence that the original had asbestos in it. We don't know anything about the original or that. That's the inference they're arguing for, right? They're not engaging with their argument. You've got to engage with their argument. Their argument is Mr. Paglioni said it. He said we sold stuff with asbestos gaskets and packing, and we sent it into the stream of commerce, and they're saying that's the kind we asked for. By his own mouth, he said sophisticated people will ask for what they need for. This was a sophisticated power plant. It knew what it needed. But this test in negligence is the subject of knowledge of Cranco, Your Honor. I continue to assert it's too long of an inferential branch to say because somebody at the end bought a valve from Westinghouse that may have or may not have had asbestos in it. We don't know that. And because Cranco knew that some people were using asbestos valves for some services and sold some valves in that way, those two just don't connect. Your argument, you would have the knowledge requirement to include knowing who the end user is that's going to use the valve with the asbestos gasket inside of it? Or at least how it's going to be used, where it's going to be used, who's going to use it, when it was sold, any of these things. If it's enough to have knowledge that it's going to be used with the asbestos gasket with which it's sold by someone downstream in that stream of commerce, then we're back to what Judge Jordan was describing and the theory on which your colleague seems to be relying. This is why the duty ends with the original because you can sell one with asbestos in it and it can go somewhere where the replacement is in asbestos, where they use something else. And you can sell one without asbestos in it that someone chooses to use with asbestos. There's different replacements. And in cases where they found a duty, all four of the cases that arise from other courts are Navy cases where the Navy has a record of everything and they went to the Navy and the Navy said exactly what was ordered and from whom it was ordered and what it was being used for. None of those facts are here. And it's too broad of a leap to say because Cranco sold some valves, we don't know if they're this valve with asbestos, then Cranco somehow knew after it passed through four sets of hands that this lead facility would use this in a certain way and it just on a knowledge standard doesn't connect. And I'm sorry, two final points I wanted to make. One is Section 388 of the restatement. If you can make it in a minute. 30 seconds. Section 388 of the restatement has been adopted expressly by the Pennsylvania Supreme Court. It is the law of Pennsylvania. And I just wanted to read one quote. This is a policy quote from the Supreme Court of Pennsylvania in Wenrick, which is that mere knowledge of a dangerous situation, even by one who has the ability to intervene, is not sufficient to create a duty to act. Got you. Quote from Pennsylvania Supreme Court. Thank you very much and I appreciate your indulgence on the time. Thanks, Mr. Berry. Okay. We'll call our next case.